SURGINER, adm'r, vs. PADDOCK et al.

1. EJECTMENT: *Pleading, etc.*

Under the provisions of the act of March 5th, 1875, regulating the practice in actions of ejectment, it is not necessary for the parties to copy their deeds in the pleadings; it is sufficient to state the substance of the deeds relied, on and file copies as exhibits.

2. ————: *Title requisite to maintain.*

The purchaser of lands from the United States, who obtains a patent certificate, does not acquire the legal title; but he may, under our statute, maintain ejectment thereon.

3. PRACTICE.

The failure of an administrator, suing in his representative capacity, to file his letters, or a copy thereof, should be reached by a rule on him to produce the letters, or a copy, and is no cause of demurrer.

4. DONATION: *Setting aside, notice, etc.*

If the donee of land forfeited to the State for taxes fail to pay for the improvements thereon, as provided by sec. 3905 Gantt's Digest, he is not entitled to notice of an application by the owner of the improvement to set aside the donation and purchase the land; but the deed of the auditor to the owner of the improvement will not be conclusive against the donee.

5. ————.

The law requires the donee from the State to pay for improvements, whether they were made before or after the forfeiture of the land.

6. ————.

If the owner of an improvement on land forfeited to the State for taxes, and subsequently donated, dies, his administrator is entitled to be paid by the donee for the improvements; and, upon failure of the donee to pay for the same, may purchase the land in his representative capacity for the benefit of the creditors and heirs.

APPEAL from *Benton* Circuit Court.

Hon. J. M. PITTMAN, Circuit Judge.

*Watson* and *Rose*, for appellant.

*Clark & Williams*, and *J. D. Walker, contra.*

ENGLISH, CH. J.:

Ejectment by Wiley A. Surginer, administrator of William Harrison, deceased, against Samuel F. Paddock, Mary B. Paddock and Z. P. Snider, determined in the Benton Circuit Court.

The complaint alleged, in substance:

That William Harrison, in the year 1875, entered, at the United States land office at Fayetteville, the south half of the southeast quarter of section 1, and the north half of the northeast quarter of section 12, township 17 north, range 34 west, 160

acres, situated in Benton County, for which he paid $1.25 per acre, and obtained a certificate of entry from the receiver of public moneys.

That Harrison, in his lifetime, received no patent for the lands, and that his certificate of entry was lost or destroyed, and could not be produced; but plaintiff files a certificate of the register of the land office, etc., showing that said lands were entered at the time, place and price aforesaid, by said Harrison.

That Harrison entered into possession of said lands under the purchase aforesaid, and made valuable and lasting improvements thereon.

That about the 25th of November, 1874, Harrison died intestate in the county of Benton, and on the 3d of April, 1875, letters of administration upon his estate were duly granted to plaintiff by the Probate Court of said county (which are herewith filed and marked exhibit B) after he had given bond as required by law, and plaintiff is now administering said estate.

That in the year 1870, said lands were forfeited to the State for the non-payment of the taxes for that year; and thereafter, on the 28th of October, 1873, were donated, under the laws of the State, then in force, to defendant Mary B. Paddock, and she and her husband, defendant Samuel F. Paddock, immediately took possession of said land under the donation deed, and now hold possession of said land under the deed of the auditor of the State, known as a donation deed.

That on the 26th day of November, 1875, plaintiff applied to the auditor of the State, in the manner provided by law, to have the deed made by the Auditor to said Mary B. Paddock set aside, and canceled, and held for nought; and that said lands be sold to plaintiff, as administrator of the estate of said Harrison, for the benefit of said estate. That at the time of making said application to purchase and redeem said lands for the benefit of said

estate, said estate was largely indebted, and without said lands as assets, would be insolvent. That on said day, the auditor did set aside, cancel and hold for nought the deed so made to said Mary B. Paddock, and sell and convey to plaintiff, by deed duly executed in the manner provided by law, the said lands, which deed is in words and figures, as follows, to-wit:

" The State of Arkansas, to all to whom these presents shall come, greeting: Know ye, that in pursuance of law, the following described land, situated in the county of Benton, in the State of Arkansas, which had been forfeited to the State for non-payment of taxes, viz: South half of southeast quarter section 1, and the north half of the northeast quarter section 12, township 17 north, range 34 west, was offered at public auction by the auditor of the State of Arkansas, in September, 1873, and not sold for want of bidders, and Mary B. Paddock having applied to the Commissioner of State Lands to donate said land, and being by him furnished with a certificate, showing that the same was subject to donation, said tract of land was, on the 28th day of October, 1873, donated to the said Mary B. Paddock, by deed of that date. And whereas, it has been made to appear by the affidavit of W. A. Surginer, administrator, that the estate of William Harrison, deceased, owned an improvement on said land at the time it was donated to said Mary B. Paddock ; and that she had not paid, or tendered to him, as such administrator, or any one for him, double the value of such improvement, within the time prescribed by law, and the time for making such payment and for filing the receipt as evidence thereof having elapsed ; and whereas, the said W. A. Surginer, as administrator of estate of Wm. Harrison, having applied to the Commissioner of State Lands and the auditor to purchase said lands, and being by them furnished with a certificate of purchase, showing that the sum of $65.22, the taxes, penalty and costs now due on said land has

been paid into the State treasury, in accordance with law : Now, therefore, I, Wm. R. Miller, as auditor of the State of Arkansas, for and in consideration of the premises, do, by these presents, grant and convey unto the said above named applicant, W. A. Surginer, as administrator of the estate of Wm. Harrison, deceased, his heirs and assigns forever, all right, title, interest, claim and estate of the former owner in and to the above described land, and also all the right, title, interest and claim of the State of Arkansas thereto, to have and to hold the same as now held or owned by the said State, unto the said grantee, and to his assigns forever, as administrator aforesaid. In testimony whereof, I, Wm. R. Miller, as auditor of State of Arkansas, hereunto set my hand, and affix the seal of said office, at the city of Little Rock, this 26th day of November, A. D. 1875.

"W. R. MILLER,

[L. S.]                              "Auditor of State, etc."

Which deed was duly acknowledged, etc., and certificate of acknowledgment appended.

Plaintiff further alleges that said Samuel F. Paddock is the husband of defendant Mary B. Paddock, and that they, and defendant Z. P. Snider, entered into possession of said lands on the 1st day of January, 1876, and unlawfully withhold the same from plaintiff as the administrator of the estate of said William Harrison, deceased, who was on the said day, and now is the legal owner of said lands, and lawfully entitled to the possession thereof.

That said Snider holds possession of said lands as tenant of said Mary B. Paddock and Samuel F. Paddock.

Damages laid, and prayer for final judgment, etc.

Snider demurred to the complaint on numerous grounds, the court sustained the demurrer, and plaintiff declining to amend, final judgment was rendered in favor of defendant, and plaintiff appealed to this court.

The complaint is an attempt to comply with the provisions of the act of March 5th, 1875, which requires the plaintiff in actions for the recovery of land (except forcible entry and unlawful detainer), to set forth in his complaint all deeds, and other written evidences of title, on which he relies for the maintenance of his suit, and file copies of the same, as far as they can be obtained, as exhibits therewith, and state such facts as shall show a *prima facie* title in himself to the land in controversy; and the defendant, in his answer, shall plead in the same manner, etc. Acts of 1874–5, p. 229.

It surely cannot be necessary for the plaintiff to copy his title deeds in his complaint, and also file with it copies as exhibits, for this would be a needless incumbrance of the record. It must be sufficient to state the substance of deeds, etc., relied on in the complaint, and file with it copies as exhibits, as far as they can be obtained.

Under the former practice in ejectment, the parties did not produce or disclose their title deeds until offered in evidence on the trial, and surprises not unfrequently occurred by the production of deeds, etc., not anticipated, and which the party against whom they were produced had had no opportunity to examine.

One of the objects of the statute was to require the plaintiff, on filing his complaint, and the defendant, on interposing his answer, to disclose their respective titles, and exhibit copies for mutual examination, etc., to prevent surprises on the trial, etc.

*First*—The first cause of demurrer to the complaint is, that it appears from its face that the legal title to the lands was not in Harrison, but in the United States.

This is true. The complaint shows that Harrison purchased the lands of the government, paid for them, and obtained a patent certificate, but that he had not received the patent. The naked legal title, upon this showing, remained in the United

States, and the equitable title was in Harrison, and, upon such title, he, or his administrator, could, under our statute, maintain ejectment against one in possession of the lands without a better title. Gantt's Digest, sec. 2254.

*Second* cause of demurrer—That it does not appear from the face of the complaint, that plaintiff had any evidence that Harrison purchased the lands of the United States.

The entry and issuance of the certificate of purchase are alleged, and the loss or destruction of the certificate averred as an excuse for not filing a copy as an exhibit, which was sufficient under the above act of March 5th, 1875. The complaint, however, makes the certificate of the register that the entry had been made by Harrison an exhibit, which was a *prima facie* showing of the entry, in connection with the averment of the issuance and loss of the certificate of purchase.

*Third* cause of demurrer—That the complaint avers that Harrison entered upon the lands under his purchase from the United States, and made valuable and lasting improvements thereon, but does not show in what such improvements consisted, the extent and character thereof.

The character and extent of the improvements might become the subject of inquiry on the trial, under the *ad quod damnum* laid in the complaint, but the plaintiff, in making out a *prima facie* showing of his title to the lands in the complaint, was under no necessity to allege the character and extent of the improvements, for they were not an element of his title to the lands.

*Fourth* cause of demurrer—That plaintiff does not make profert of his letters of administration, or file a copy thereof with his complaint.

The grant of the letters is sufficiently averred (5 Ark., 385 ; 6 id., 404), and the complainant professes to file them as exhibit B.

The grant being averred, the failure to file the letters, or a copy, was no cause of demurrer. The court, by rule, would compel the production of the letters, or the filing of a copy, on motion of defendants.

*Fifth* cause of demurrer—In substance, that the complaint does not aver that plaintiff filed with the auditor an affidavit, showing that the estate of Harrison owned an improvement on the lands at the time they were donated to Mrs. Paddock, and that she had not paid or tendered to plaintiff, as his administrator, double the value of such improvements, etc.

The complaint alleges that plaintiff made the application to redeem the lands in the manner prescribed by law; and the auditor's deed, set out in the complaint, recites the making of the affidavit required by the statute. Gantt's Digest, sec. 3905.

Thus the complaint made a *prima facie* showing of title to the lands in the plaintiff as administrator of Harrison, which was all that he was required to do under the act of March 5th, 1875.

*Sixth* cause of demurrer—That the complaint avers no notice to Mrs. Paddock of the application of the plaintiff to the auditor to set aside her donation deed, and permit him to redeem the lands.

This is true, nor does the auditor's deed recite any notice to her, nor does the statute require any to be given.

The statute provides that:

"It shall be the duty of every person who has obtained a donation to a tract of improved land, within three months from the date of the deed, to pay to the owner of such improvement double the value thereof, and to take from such person his receipt for the amount of money so paid, which receipt shall, within thirty days thereafter, be filed with the auditor; and should any such improvement not be paid for by the donee, and the receipt showing such payment shall not be filed with the auditor within the

time prescribed, such donee shall forfeit all right to the land; and the owner of such improvement, upon filing with the auditor his affidavit, stating that he owned an improvement on the land at the time it was donated, and that the donee has not paid or tendered to him double the value of such improvement, if the time allowed for making such payment, and filing the receipt as evidence thereof, shall have elapsed, shall be allowed to purchase said land, including his improvement, by paying all arrearages of taxes which may be charged thereon, in the same manner as if the land had never been donated; and the auditor shall execute to such purchaser a deed for the same, which shall have the same validity, force and effect, and be evidence of title, as other deeds executed by the auditor for lands sold for taxes." Gantt's Digest, sec. 3905.

It might have been more consistent with the principles of justice for the legislature to provide for the auditor to give notice to the donee before acting upon the application of the owner of the improvement to purchase the land, but this was not done; and it might be well for the auditor to give such notice as a matter of fair practice under the act; but this is not required by the law. The donee takes the land as a gift from the State, and upon such terms and conditions, and under such regulations as the legislature has thought proper to prescribe.

The deed, however, of the owner of the improvement, made upon an *ex parte* application and affidavit, is only *prima facie* evidence of a valid right, and not conclusive against the donee. If the applicant make a false affidavit—if, in fact, he has no improvement on the land, or the donee has paid or tendered to him double the value thereof, within the time prescribed by the act—this may be shown by the donee in the courts, to defeat the deed, and re-establish the title of the donee. *Lacefield* v. *Stell*, 21 Ark., 437.

Surginer, adm'r, vs. Paddock et al.

*Seventh* cause of demurrer: That the complaint alleges that the estate of Harrison owned an improvement on the lands at the time they were donated to Mrs. Paddock, but does not show whether the improvement was made before or after the lands were forfeited to the State for taxes.

It seems, from the complaint, that Harrison lived several years after the lands were forfeited to the State, but we do not see that it is material whether he made the improvement before or after the forfeiture. If he made it before the forfeiture, the improvement passed to the State with the lands, and as between him and the State, both the lands and the improvement belonged to the State, and were subject to her disposal according to her pleasure. So if the improvement was made by Harrison on the lands after the forfeiture, and before the State donated the lands to Mrs. Paddock, the improvement belonged to the State, being made upon her lands.

The legislature, representing the sovereign owner of the lands forfeited for the non-payment of taxes, can provide for the redemption, sale or donation of such lands as it may please. If it chooses, as a matter of grace, to treat a person who has made an improvement upon lands, before or after forfeiture, as, in a sense, the owner of such improvement, who can gainsay it? If it is the pleasure of the legislature to give the land to a person on condition that the donee shall, within a prescribed time, pay or tender to such owner of an improvement double the value thereof, and the donee accepts the gift on such conditions, what right has he to complain? None, we think.

The only other cause of demurrer assigned that need be noticed, is, that appellant, as administrator of Harrison, had no right, upon the failure of Mrs. Paddock to pay for the improvement, to purchase the lands of the State, by paying all arrearage of taxes charged thereon, as provided by the statute.

Surginer, adm'r, vs. Paddock et al.

Had Mrs. Paddock thought proper to pay for the improvement within the period prescribed by the statute, no doubt but that appellant would have had the right, as the administrator of Harrison, to accept the money, and execute to her the proper receipt to file with the auditor. No doubt, also, but that a tender of the money to him would have been good.

It would have been but the exercise of a power by an administrator, similar to the collection of a debt due to the estate represented by him, and the giving an acquittance therefor.

So, on her failure to pay for the improvement, we can see no good reason why the appellant, as the legal representative of Harrison's estate, might not make and file with the auditor the affidavit of non-payment; and purchase the lands, with the improvement thereon, by paying the arrearages of taxes charged on the lands, and take the deed to himself, in his fiduciary character, and hold the same in trust for the benefit of the creditors and heirs of Harrison.

It is but a mode provided by law for the redemptien of lands forfeited to the State for the non-payment of taxes.

Lands being assets in the hands of an administrator, under our statute, for the payment of debts, it is his duty to pay the taxes on them, and if he finds it to be to the advantage of the estate, he may, no doubt, redeem them from tax sales and forfeitures, in any of the modes prescribed by law.

The judgment is reversed, and the cause remanded, with instructions to the court below to overrule the demurrer to the complaint, with leave to the appellees to answer if they desire so to do.